# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

|                                   |   |                           |
|-----------------------------------|---|---------------------------|
| **SHERRY A. PARMLEY,**            | ) | Case No. 5:09cv00018      |
|           *Plaintiff*             | ) | REPORT AND                |
| v.                                | ) | RECOMMENDATION            |
| **MICHAEL J. ASTRUE**,            | ) | By:  Hon. James G. Welsh  |
| Commissioner of Social Security,  | ) | U. S. Magistrate Judge    |
|           *Defendant*             | ) |                           |

The plaintiff, Sherry A. Parmley, brings this action pursuant to 42 U.S.C. § 405(g) challenging the final decision of the Commissioner of the Social Security Administration ('the agency") denying her claim for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

The Commissioner's Answer was filed on August 14, 2009 along with a certified copy of the administrative record ("R.") containing the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By order of referral entered the same day, this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

At the time of the Commissioner's final decision the plaintiff was forty-two years of age, [1] with a high school education, and with a vocational history which included work as a cashier, driver for an auto auction, mail clerk, material handler, phone representative, and product handler. (R.27,42-43,70-75,84,107,114,199,209,218,222-223,229,243-252.) In her appeal the plaintiff contends that the administrative law judge ("ALJ") erred by concluding that she was not disabled due to the combined effects of her mental health and physical problems. In his response the Commissioner argues that substantial evidence, including *inter alia* the opinions of "five acceptable medical sources," support the administrative conclusion that through the decision date the plaintiff retained the functional ability to perform a range of unskilled work, including her past relevant job as a driver. Each party has moved for summary judgment; no written request was made for oral argument, [2] and the case is now before the undersigned for a report and recommended disposition.

Based on a thorough review of the administrative record and for the reasons herein set forth, it is recommended that the plaintiff's motion for reversal and remand of the final administrative decision be denied, the Commissioner's motion for summary judgment be granted, and an appropriate final judgment be entered affirming the Commissioner's decision denying the plaintiff's DIB application.

I. **Standard of Review**

---

[1] At this age the plaintiff is classified as a "*younger person*," and pursuant to the agency's regulations age is generally considered not to affect seriously a younger person's ability to adjust to other work. 20 C.F.R. §§ 404.1563(c) and 416.920(c).

[2] Paragraph 2 of the court's Standing Order No. 2005-2 requires that the plaintiff in a Social Security case must request oral argument in writing at the time his or her brief is filed.

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB on or before August 7, 2008, the date of the Commissioner's final decision.  "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard." *Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4th Cir. 1996)).  This standard of review is more deferential than *de novo*.  "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Mastro*, 270 F.3$^d$ at 176 (quoting *Laws v. Celebrezze*, 368 F.2$^d$ 640, 642 (4th Cir. 1966)).  "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Id.* (*quoting Craig v. Chater*, 76 F.3$^d$ at 589).  Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2$^d$ 396, 397 (4th Cir. 1974).  The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton*, 211 F.3$^d$ 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

## II.     Administrative History

The record shows that the plaintiff protectively filed her application on March 7, 2006, alleging a disability beginning March 29, 2005. (R.121,199,209,218,222.) Her claim was denied both

initially and on reconsideration, and a first administrative hearing was held on June 14, 2007. (R.39-80,112, 143-145,153-157.) At this hearing the plaintiff was present, testified, and was represented by counsel. (R.39,41-64.) A friend, Angie Moore, testified in support of the plaintiff's application (R.64-68), and vocational testimony was provided by Earl Glosser, PhD. (R.68-79.)

Utilizing the agency's standard sequential evaluation process, the plaintiff's claim was denied by written administrative decision dated June 29, 2007. (R.118-129.) Therein, the ALJ concluded that the plaintiff's degenerative disc disease was her only *severe* [3] impairment, that it was not of listing-level severity, [4] that she retained the functional ability to perform sedentary work [5] with a "sit/stand option," [6] and that she was capable of performing her past relevant work as an order taker. (R.123-128.)

---

[3] Quoting *Brady v. Heckler*, 724 F.2$^d$ 914, 920 (11th Cir. 1984), the Fourth Circuit held in *Evans v. Heckler*, 734 F.2$^d$ 1012, 1014 (4th Cir. 1984), that "an impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *See also* 20 C.F.R. § 404.1520(c).

[4] The adult impairments listed in 20 C.F.R. Part 404, Subpart P, Appx. 1, are descriptions of approximately 125 physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect. "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results. For a [person] to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *See* Social Security Ruling (SSR) 83-19." Sullivan v. Zebley 493 U.S. 521, 529-530 (1990).

[5] *"Sedentary work"* is defined in 20 C.F.R. T 404.1567(a) to involve lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying-out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met.

[6] The opportunity to change positions during the performance of work activity is typically described as the "sit/stand option" or "sit/stand limitation." *See Gibson v. Heckler*, 762 F.2$^d$ 1516, 1518 (11th Cir., 1985).

4

Arguing that the ALJ erred by failing to consider her depression to be a *severe* impairment, the plaintiff made a timely request for Appeals Council review. (R.116, 191-198.) Her request was granted; the decision of the ALj was vacated, and the matter was remanded to the ALJ for the taking of additional evidence and for further evaluation of both the nature and the severity of her mental impairments. (R.116-117.)

Following Appeals Council remand, the ALJ obtained a consultive psychological examination by Joseph Cianciolo, PhD., and at a supplemental administrative hearing on July 15, 2008 the ALJ obtained the medical testimony of Robert Muller, PhD.(R.18, 96-106,512-517.) At this second hearing the plaintiff was again present, testified, and was represented by counsel. (R.39,41-64, 81,86-96.)

After outlining the medical evidence pertaining to the plaintiff's depressive condition, Dr. Muller provided testimony about the plaintiff's work-related limitations. *Inter alia*, he testified that in his professional opinion, the plaintiff was *mildly* limited in her ability to understand, remember and carry-out simple instructions, and *mildly to moderately* limited in her ability to deal with coworkers, and *moderately* limited in her ability to deal with workplace changes. (R.103-105.)

At the supplemental hearing additional vocational testimony was also provided. Particularly relevant to Dr. Muller's testimony, the vocational witness (Robert Jackson) stated that plaintiff's past

vocationally relevant job as a driver was exertionally light, [7] unskilled, and could be performed by an individual with the functional limitations outlined by Dr. Muller. (R.18,106- 110.)

Once again the ALJ followed the agency's five-step decisional process. [8] He again concluded that the plaintiff's back disorder was a *severe* impairment. (R.21-23.) Pursuant the Appeals Council's order to evaluate further the plaintiff's mental status, the ALJ reviewed in some detail the relevant portions of the previous record, the results of Dr. Cianciolo's consultive psychological examination, and the testimony of Dr. Robert Muller. (R.22-25.) Based on this "independent and full review of the record," the ALJ once again concluded that the plaintiff's mental impairment was not a decisionally severe impairment and that her various functional limitations neither met nor medically equaled a listed impairment. (R.21-25.) It was then his further conclusion that she retained the functional capacity to perform unskilled, light work, and was capable of performing her past relevant work as a driver. (R.25-27.)

---

[7] "*Light work*" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time generally involve some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

[8] To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of impairments found at 20 C.F.R. Part 4, Subpt. P, Appx. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. §.404.1503(a); *Hall v. Harris,* 658 F.2$^d$ 260 (4th Cir. 1981).

Contending this second ALJ decision was based on an improper weighing of the medical and testimonial evidence, the plaintiff again made a timely request for Appeals Council review. (R.13-14,576-583.) Her request was denied (R.9-12), and the decision of the ALJ dated August 7, 2008 now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

**III.     Medical Record**

As outlined in her application and related submissions, the plaintiff contends that her ability to work is substantially limited due to degenerative disc disease, residual problems related to an L4/5 spinal fusion, and chronic low back pain. (R.221-222,262.)   Her activities, she stated, were "somewhat limited due to [her] pain," and it became "worse with any excessive standing, walking or sitting." (R.262,553; *see also* R.255-260.)  In her later reports to the agency, she additionally reported that her activities had become "more limited" due to stomach pain [9] and "severe depression." (R.264, 265-266.)

**A.    Physical Impairments**

Consistent with her principal physical problem, the plaintiff's medical records document a primary diagnosis of chronic mechanical low back pain which did not respond to conservative therapy, and for which she underwent an L4/5 posterior interbody fusion on July 25, 2005 at Medical

---

[9] The plaintiff subsequently underwent gallbladder surgery and experienced a full recovery in September 2006. (R.364,496-501.)

College of Virginia. (R.324-337,344-345,346,396-410.) Neither a pre-surgery MRI study nor the pre-surgery physical examination disclosed any other spinal abnormality (R.324,343, 345.)

The plaintiff's recovery from this surgery was uneventful. By the time she saw her orthopaedic surgeon for the last time in December 2005, his records document a "good" interbody fusion at L4/5, no compromise of her spinal canal, a well-healed incision, and a good recovery. (R.338-343.) Two months later, however, she saw Dr. Preston Grice (Augusta Pain Management Center) with complaints of acute low back pain which she described as "worse" than before her surgery. (R.396.) However, on examination and in contrast to her pre-surgery condition, Dr. Grice noted that she reported no lower extremity pain, numbness, tingling, weakness, or other radicular symptoms. (R.396-397.) At that time he described the plaintiff's condition as a "probable post-laminectomy syndrome," and he prescribed Percocet and directed her to discontinue all other pain medication. (*Id*.)

In March 2006, after reporting positive results with the use of Percocet (a combination of oxycodone and acetaminophen), Dr. Grice referred the plaintiff to an aquatics physical therapy program to help her "learn to self-manage her condition and improve her function." (R.346-347.) Although she learned an independent pool program, the plaintiff withdrew from the program after seven sessions without attaining her therapy goals. (R.348-349.)

In contrast to her report of positive pain control results with Percocet at the time of her earlier office visit, in April she told Dr. Grice it was providing her "minimal if any benefit," and Dr. Grice

8

started her on a trial Methadone regime. (R.392.) Dr. Grice's examination notes on that occasion show the plaintiff to have a well-healed lumbosacral scar, to be in no acute distress, to exhibit no lower extremity swelling, edema or loss of strength, to exhibit no mental status abnormality, to exhibit some limitation of motion and lumbosacral tenderness on palpitation, and to report having "good days and bad days" due to continuing depression. (R.392-393.)

Over the course of the next two years, Dr. Grice's office records indicate that he saw the plaintiff intermittently, that she continued to report ongoing low back pain, that he continued to treat her pain pharmacologically, and that this condition required no hospitalization or other acute care. (R.384-391,476-477, 522-527,549-552,558-561.) On the basis of the plaintiff's interest in receiving an intrathecal medication pump implant, however, in January 2007 she was referred for a psychosocial assessment, which determined that the plaintiff possessed the requisite cognitive abilities necessary to understand the pump procedure and to give meaningful informed consent for the procedure. (R.477,519-521.)

Consistent with the unchanged nature of the plaintiff's clinical condition and the absence of any weakness or radiculopathy, an MRI in November 2007 demonstrated a normal post-operative L4/5 laminectomy and posterior fusion and an otherwise normal lumbosacral spine with no evidence of any recurrent or residual herniation or fibrosis. (R.503-504,526.)

On the basis of the plaintiff's ongoing reports of chronic low back pain and her interest in an intrathecal catheter system, in May 2008 Dr. Grice installed a catheter for intrathecal pain medication

delivery. (R.533-535,529-553,562-575.) This implantation was accomplished without complications. The plaintiff did well post-operatively, and two weeks later she reported experiencing a thirty percent (30%) reduction in level of her pain . (R.529-553,565,572-575.)

Based on separate reviews of the plaintiff's then-available medical records, state agency reviewers concluded in June and later in November 2006 that the plaintiff back problems were not of disabling severity. (R.350-356,411-416.) In the opinion of each, the plaintiff retained the functional ability to perform work at a light exertional level on a regular and sustained basis. (R.352-354,412-414.) In making these assessments, the reviewers noted a number relevant findings in the medical record, including the successful spinal fusion surgery in July 2005, the plaintiff's normal strength and sensation in all extremities, negative straight leg raising test results, the absence of any spinal stenosis or other post-surgical changes, and the routine and relatively effective nature of her pain-related treatment. (R.356,416.)

**B. Mental Impairments**

Central to her disability claim, the plaintiff's medical records also document her treatment for ongoing depressive symptoms. In the Spring of 2006 she reported "some" depressive symptoms to Dr. Grice at Augusta Pain Management, and at some earlier point she also reported these symptoms to Dr. Victor Buckwalter (Carilion Family Medicine – Weyers Cave). (R.381,395,391.) Each of these treating health care providers related the plaintiff's depressive symptoms to her ongoing pain problems, and Dr. Buckwalter additionally related them "as well to her family situation." (*Id*.) Paxil, and later Effexor, were prescribed by Dr. Buckwalter, and the plaintiff was referred to Jean Geiser,

LPC , (AMC Outpatient Behavioral Health Services) for a period of counseling between March and December 2006. (R.373,381-383,422-450.)

After approximately five months of generally weekly therapy sessions, but without the benefit of psychological testing, in August 2006 Ms. Geiser, LPC, completed a mental assessment questionnaire in which she reported that the plaintiff "was doing much better in some ways." (R.358,361.) In her view, however, she deemed the plaintiff to be unable to work either a normal competitive workday or workweek without interruption due to her mental health symptoms. (R.359-363,417-421.) Additionally, she assessed the plaintiff's overall level of functioning at that time to be 58 on the GAF scale. [10] (R.359.)

Her treatment notes for the period between March and the end of August 2006, however, consistently assess the plaintiff's impairment level to be "mild." (R.433-448.) During this period, Dr. Buckwalter similarly viewed the plaintiff's depressive issues to be "stable," on Effexor, and to be under "good control." (R.364-380.)

In December, Ms. Geiser completed a second questionnaire in which she again outlined the plaintiff's various self-reported mental health problems, including *inter alia* her history of depression,

---

[10] The Global Assessment of functioning ("GAF") is a numeric scale which ranges from zero to 100 and is used by mental health clinicians and doctors to represent a judgment of an adult individual's overall level of "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." *Diagnostic and Statistical Manual of Mental Disorders Fourth Edition*, ("DSM-IV"), 32 (American Psychiatric Association 1994). A specific GAF score represents a clinician's judgment of an individual's overall level of functioning, and a GAF score in the range of 51 to 60, for example, indicates that the individual has moderate symptoms or moderate difficulty in social or occupational functioning (*e.g.,* few friends, conflicts with peers or co-workers).

11

marital and family difficulties, suicidal thoughts, difficulty dealing with her emotions, limited insight and thought content, poor judgment, low self-esteem, and dependent personality traits. (R.417-21.) In her responses, Ms. Geiser does not suggest that any of these mental health issues were severe enough to require hospitalization or other acute care; she does, however, indicate that over time the plaintiff had exhibited little motivation to deal constructively with these issues. (R.419-420)

After reviewing the plaintiff's medical records in late December 2006 a state agency psychologist concluded that the plaintiff's depressive disorder mildly restricted her social functioning, her ability to maintain concentration and persistence, and her activities of daily living. (R.451,454,461.)

Shortly before these year-end assessments, the plaintiff began to see Tina Judge, a nurse practitioner at Comprehensive Health Systems for medication management. (R.485,) Nurse Judge's records variously dated between November 9, 2006 and February 13, 2008 report the plaintiff's condition to be generally stable with her prescription use of Paxil and Trazodone. (R.481-485,508-511.) Similarly, a mini-mental status examination conducted in connection with a gastroenterology work-up by Byrd Leavell, MD, in April and May 2007 suggested no significant mood, affect, attention or concentration abnormalities. (R.486-487,491-492.)

Following the Appeals Council's remand of the plaintiff's claim, a detailed consultive psychological examination was conducted by Joseph Cianciolo, PhD, in January 2008. (R.493-494, 512-517.) He found the plaintiff to be pleasant and cooperative, to be clean and neatly attired, to

12

exhibit appropriate judgment, and to be in the average range of intellectual functioning. (R.512-514.) He noted that she appeared to be depressed, to exhibit an affect consistent with depression, to have a recurrent moderate depressive condition, and to be functioning at 60 on the GAF scale. [11] (R.512-513.) Based on his consultive evaluation, Dr. Cianciolo concluded that the plaintiff was *mildly to moderately* impaired due to her depression, but in his professional opinion she retained the capability to complete both simple and complex tasks, to maintain regular attendance in the workplace, to perform work activities on a consistent basis, and to maintain regular workplace attendance. (R.514.)

In testimony at the supplemental hearing in July 2008, Robert Muller, PhD provided the ALJ with a detailed outline of the plaintiff's mental health history and relevant related issues. (R,96-106.) He noted *inter alia* her history of chronic depression, her episodes of suicidal thoughts and several attempts between 1991 and 2006, the fact that her condition had never required any inpatient psychiatric hospitalization, the fact that she had never been psychotic, and the fact that her condition has been pharmacologically managed by her primary care provider with the use primarily of Paxil. (R.97-102.) After also noting her normal insight and judgment and her average range IQ, Dr. Muller opined that from an emotional or mental standpoint the plaintiff's condition was neither of listing-level nor of disabling severity. (R.102-105.)

**IV.    Analysis**

**A.**

---

[11] See preceding footnote.

It is the plaintiff's contention on appeal that substantial evidence does not support the ALJ's non-disability finding. Based on a thorough review of the record, one is compelled to conclude that this argument is simply without merit. First and foremost, the plaintiff has failed to carry her burden of demonstrating that her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C.§ 423(d)(2)(A); *see Blalock v. Richardson*, 483 F.2$^d$ 773, 775 (4th Cir., 1972.). Second, as the above physical and mental impairment summaries amply demonstrate, there is patently substantial evidence in the record to support the ALJ's non-disability findings, and to demonstrate that he reached them by application of the correct legal standard. *Hays v. Sullivan*, 907 F.2$^d$ 1453, 1456 (4th Cir., 1990) ("any fact, if supported by substantial evidence, shall be conclusive").

In making his sequential evaluation of the evidence , the ALJ determined that the plaintiff had not worked during the alleged disability period. (R.20.) He found her back condition to be a *severe* impairment, and he concluded that "there was no convincing support to find that [her] depression [was] a severe impairment." (R,.21-25.) He found neither condition to meet or medically equally a listed impairment and that she retained the residual functional capacity to perform unskilled, light work, [12] including her past relevant work as a driver for an auto auction and driving service. (R.22-

---

[12] "*Light work*" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, or when it involves sitting most of the time generally involve some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

27.) *See* 20 C.F.R. § 404.1520(a)(4); *Bennett v. Sullivan*, 917 F. 2nd 157, 159 (4th Cir., 1990); *Reichenbach v. Heckler*, 808 F.2d 309, 311(4th Cir. 1985).

The plaintiff nevertheless argues on appeal that the ALJ committed multiple decisional errors. At its core her argument is that the ALJ erroneously failed to consider the combined severity of her depression (including the three suicide attempts reported by her therapist) [13] and her unsuccessful, albeit persistent, efforts to obtain relief from chronic back pain. [14] This review of the ALJ's decision, however, demonstrates the contrary.

After carefully reviewing the mental health evidence, the ALJ noted his "concur[rence]" with the assessments of Dr. Cianciolo (R.512-517), the testimony of Dr. Muller (R.96-106), and the impairment and functional capacity and determinations of the state agency psychologists. (R.451-463,464-467.) (R.21-25.) Before reaching this conclusion, however, the ALJ noted that he had considered the impairment information proved by Ms. Geiser, [15] and after noting a number of decisionally pertinent inconsistent factors, including a list of symptoms that appeared to be inconsistent with her treatment notes, the absence of any suicide-related documentation before March 10, 2006 and her generally "fair" prognosis and "mild" level of impairment over the course of her

---

[13] *See* R.358.

[14] This argument by the plaintiff ignores totally the ALJ's finding that her medical records show that she responded positively to her pain treatment regime (R.24-25,358,357,371,479,483,520.)

[15] Ms. Geiser is not a treating physician. Rather, she is a therapist, which, under the regulations, is not considered an "acceptable medical source." *See* 20 C.F.R. § 404.1513(d); SSR 06-03p,

15

treatment (R.422-448), the ALJ concluded that a number of he symptoms and functional limitations identified by Ms. Geiser were "devoid of supporting evidence." (R.22.)

Similarly, the ALJ reviewed evidence pertinent to the plaintiff's back impairment and attendant chronic low back pain. Implicitly incorporating the relevant parts of his earlier decision, the ALJ took note of the fact that no new evidence concerning this impairment had been submitted since the first hearing which might suggest some worsening of her condition and noted, as he had in his earlier decision, that the relevant evidence concerning her back condition "primarily" turned on the "issue of subjective pain, which he did not fully credit." [16] (R.22.)

In making his determination that the plaintiff was not disable by pain, the ALJ was decisionally obligated to follow, and did in fact follow, the two-step process approved by the Fourth Circuit in *Craig v. Chater*, 76 F.3$^d$ 585, 594 (4th Cir. 1996); *see* 20 C.F.R. § 404.1529(a) and (b). He first determined that there was objective medical evidence in the record to document the existence of a back impairment which could be reasonably expected to produce the plaintiff's complaints of chronic pain and related depression. (R.24,26-27,124-126.) He then evaluated the intensity and persistence of her pain and related depressive symptoms and the extent to which they limited her ability to work. (*Id*.) Among other things, he noted the exaggerated nature of her pain-related

---

[16] In his earlier decision the ALJ noted that the plaintiff's back condition "limit[ed] her mobility and ability to lift heavy objects." (R.123.) He took note of her claim of debilitating back pain and leg weakness, and he recognizes that the plaintiff's symptoms "can sometimes suggest a greater level of severity of impairment than can be show by the objective medical evidence alone." (R.125.) He then assessed the plaintiff's credibility based on the factors outlined in 20 C.F.R. § 404.1529(c) and concluded that the totality of the evidence, including her activities, the generally unremarkable clinical and diagnostic findings, the routine and the conservative nature of her care and her good response to narcotic pain medications , was inconsistent with the degree of limitation she claimed. (R.125-127; *see also* R.324-349,364-410,476-480.)

testimony and her statements about falling due to bilateral leg weakness, about experiencing one or two weekly episodes of acute depression where she does not leave her home, and to having made multiple suicide attempts. (*Id*.) In contrast, the ALJ noted that such extreme pain and attendant leg weakness was inconsistent with the repeated clinical findings of full lower extremity sensory and motor strength and the absence of any evidence of spinal canal or cord compromise since her 2005 surgery. (*Id*.) Likewise, he concluded that her statements about the degree to which she is functionally limited was inconsistent with her ability to drive independently, with her ability to socialize, the absence of any recommended mental health counseling since 2006, the absence of any psychiatric care except for periodic medication management, [17] and the assessments of Dr. Cianciolo, Dr. Muller and the state agency reviewers. (R.26-27.)

As the Fourth Circuit stated in *Craig*, " Although [an individual's] allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence . . . ." 76 F.3$^d$ at 595. As is the case with any fact questions, the plaintiff's testimonial credibility about her pain and other symptoms is for the ALJ to make. *See Shively v. Heckler*, 739 F.2$^d$ 987, 989-990 (4th Cir. 1984). Moreover, his assessment of the plaintiff's credibility on this issue is properly entitled to great weight when it is supported by the record, as it most assuredly is in the case now before the court. *See Id.*

**B.**

---

[17] "If symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986).

In this case the plaintiff additionally argues that the record fails to support the ALJ's finding that she could perform her past relevant work as a driver. This argument is based solely the vocational witness's testimony the plaintiff would be unable to perform any of her past relevant work, if her testimony about her functional limitations was assumed to be fully "credible." (*See* R.110.) As outlined herein above, her testimony concerning her subjective complaints was found "not to be fully credible." Thus the plaintiff's reliance on the vocational witness's testimony in response to this a hypothetical question is entirely misplaced.

## C.

The recommendation in this case to affirm the Commissioner's final decision should not be read to suggest either that the plaintiff does not suffer a depressive condition or is free of pain and other subjective discomfort. The objective medical record certainly documents both conditions; however, the record also amply supports ALJ's conclusion that the plaintiff does not have a condition, or combination of conditions, which would reasonably be expected to result in a totally disabling condition.

## V.     Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is supported by substantial evidence;

2. The Commissioner's final decision gave proper consideration and weight to the opinions of therapist Jean Geiser;

3. The Commissioner's final decision gave proper consideration and weight to the opinions of Dr. Cianciolo, Dr. Muller, and the state agency reviewers;

4. The Commissioner's finding that the plaintiff's depression was not a decisionally severe condition is supported by substantial evidence;

5. At step-three of the decisional process, the ALJ properly considered the nature and severity of the plaintiff's physical and mental health conditions and her associated functional limitations;

6. The Commissioner's determination that the plaintiff is capable of performing unskilled, light work is supported by substantial evidence;

7. The Commissioner's determination that the plaintiff is capable of performing her past relevant work as a driver is supported by substantial evidence;

8. Substantial evidence in the record supports the Commissioner's finding that through the date of the ALJ's decision the plaintiff was not disabled within the meaning of the Act;

9. The plaintiff has not met her burden of proving disability since her alleged disability onset date of March 29, 2005; and

10. The final decision of the Commissioner should be affirmed.

## VI. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision fo the Commissioner, GRANTING JUDGMENT to the defendant, DENYING plaintiff's motion for summary judgment, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

**VII.  Notice to the Parties**

Both sides are reminded that, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof.  **Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties**.  Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 24th day of March 2010.

　　　　　　　　　　　　　　　　　　　　　　/s/   *James G. Welsh*
　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge